UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 08-60330-CIV-ALTONAGA/Brown

MARK NORYCH, Individually, and
JACOB LINHART, Individually, as
former partners of Norych & Tallis, LLP,

    Plaintiffs,

v.

ADMIRAL INSURANCE COMPANY,

    Defendant.
_____/

**PLAINTIFFS' REPLY BRIEF**
(IN SUPPORT OF PLAINTIFFS' OMNIBUS MOTION *IN LIMINE*)

Plaintiffs, Mark Norych and Jacob Linhart, individually and as former partners of Norych & Tallis, LLP (jointly, "Plaintiffs"), hereby file Plaintiffs' Reply Brief (In Support of Plaintiffs' Omnibus Motion *in Limine*), and in support thereof, state as follows.[1]

**INTRODUCTION** [2]

Plaintiffs' Omnibus Motion *in Limine* requests that this Court preclude the Defendant from presenting certain evidence and legal argument. In its opposition, Defendant has failed to rebut the substantive arguments made by Plaintiffs. As such, and for the reasons further explained below, Plaintiffs' Omnibus Motion *in Limine* should be granted.

---

[1] Hereinafter: (1) all capitalized terms shall refer to those terms as defined in Plaintiffs' Motion for Summary Judgment [D.E. 106]; and (2) all emphasis in quotations is added unless otherwise noted.

[2] In its Response [D.E. 133], Admiral suggests that Plaintiffs improperly have re-raised the same issues addressed in Plaintiffs' Motion for Summary Judgment ("MSJ") after the Court rejected those arguments in denying that motion. The truth, however, is that Plaintiffs' Omnibus Motion *In Limine* was filed before the Court denied Plaintiffs' MSJ. Irrespective, the denial of Plaintiffs' MSJ does not necessarily dictate the outcome of the evidentiary issues raised in Plaintiffs' Omnibus Motion *In Limine*.

**I.      Admiral Should Not Be Permitted to Present Evidence Regarding the Missing Funds** [3]

Admiral now seeks to try a case distinctly and wholly different than the one it has pleaded. In its pleadings, Admiral's rescission claim is based solely upon an alleged failure to disclose the Tallis Defalcations. But now, Admiral seeks to try a rescission case based not only on the Tallis Defalcations, but also the failure to disclose the situation concerning the Missing Funds. That is a wholly new theory of the case that was not raised until Admiral filed its Motion for Summary Judgment. Admiral should not be permitted to significantly change the nature and basis of its claim for rescission on the eve of trial. As such, Admiral should not be permitted to try a rescission case based upon the alleged failure to disclose the Missing Funds.

**II.     Admiral Should Not Be Permitted to Present Evidence Regarding the First Application**

Admiral should not be permitted to present evidence regarding the First Application because, as a matter of law, Admiral is not permitted to rely upon that application.[4] Admiral's response is wholly inapposite. As a matter of fact, Admiral claims that there would be no Second Application but for the misrepresentations in the First Application. But as a matter of law, Admiral is not permitted to make that argument. As a matter of law, the Second Application is what controls, and Admiral's rescission claim must rise or fall based on its contents. As such, this Court should preclude Admiral from presenting evidence regarding the First Application.

**III.    Admiral Should Not Be Permitted to Present Evidence Regarding the Second Application**

Plaintiffs submit that Admiral should not be entitled to present evidence concerning the Second Application because, as further explained below, there simply was no misrepresentation in the Second

---

[3]Admiral's Response to Plaintiffs' Omnibus Motion *in Limine* [D.E. 133] (the "Response") unfortunately does not track the order of the arguments made in Plaintiffs' Omnibus Motion *in Limine* but, for ease of reference and to assist the Court, this Reply Brief will track those arguments in order in which they are made in Plaintiffs' Omnibus Motion *in Limine*.

[4]*See* Plaintiffs' Motion for Summary Judgment [D.E. 106] at pp. 15-20, Memorandum in Opposition [D.E. 120] at pp. 5-7; Reply [D.E. 122] at p. 5.

Application and, even if there was, that purported misrepresentation is not "material" to the risk Admiral assumed in issuing the Policy.

### A. There is No Misrepresentation in the Second Application

The simple fact that Admiral is unwilling to accept is that no representation was made to Admiral until September 5, 2006 – *i.e.*, the date on which Plaintiffs actually submitted the application to Admiral. And it is indisputable that, when viewed as of that date, the answer to Question No. 17 was correct and contained no false representation whatsoever. Specifically, at that time, Mitchell Tallis was dead, and no other lawyer in either the NY Firm or the FL Firm had any knowledge regarding the Tallis Defalcations. Indeed, it is undisputed that Mr. Norych and the other lawyers in the FL Firm did not come to appreciate the situation concerning the Tallis Defalcations until after the Policy became effective. Under those circumstances, it is abundantly clear that there was no misrepresentation in the Second Application when viewed as of September 5, 2006 – *i.e.*, the date that controls here.[5]

### B. The Tallis Defalcations Are Not Material to Admiral's Risk

But even assuming that the answer to Question No. 17 contains a misrepresentation (*i.e.*, assuming Admiral is correct on the date issue), the purported misrepresentation regarding the Tallis Defalcations fails to support rescission because it is not "material." In order for Admiral to be able to rescind the Policy, they must identify a misrepresentation that is "material." Here, the purported misrepresentation concerning the Tallis Defalcations is not material because the Tallis Defalcations concern only the NY Firm, whereas the Policy insured only the FL Firm.

### 1. The Policy Was Issued to Only the FL Firm – Not the NY Firm

The evidence is clear, unequivocal, and uncontroverted that the Policy insures only the FL Firm. Each and every document that Admiral issued memorializes that fact. For example:

---

[5]Interestingly, Admiral's response on this issue is completely unadorned by any legal authority whatsoever, which speaks volumes.

- the "Declarations Page" only identifies the "Named Insured" as "Norych and Tallis, LLP" – *i.e.*, the FL Firm;[6] and

- each consecutive page that follows the "Declarations Page" reflects that the sole "Insured" is "Norych and Tallis, LLP" – *i.e.*, the FL Firm;[7]

- the August 7, 2006 cover letter enclosing proposed quotations for insurance coverage sent by Admiral indicates that they concern solely "Norych and Tallis, LLP" – *i.e.*, the FL Firm;[8]

- the actual quotations identify the sole proposed insured as "Norych and Tallis, LLP" – *i.e.*, the FL Firm;[9] and

- the "Binder for Lawyers' Professional Liability Insurance," effectively binding insurance coverage, likewise identifies only "Norych and Tallis, LLP" – *i.e.*, the FL Firm.[10]

Against that backdrop, the NY Firm is not identified anywhere as an "Insured" in any of the myriad documents issued by Admiral. Thus, it simply is ludicrous for Admiral to argue that the Policy insured both the FL Firm and the NY Firm when Admiral's own documents, which it prepared, belie that argument. As such, Admiral should not be permitted to argue that the Policy insured the NY Firm.[11]

Admiral's response constitutes nothing more than a flailing attempt to divert the Court's attention from the true facts to change what is unchangeable. Indeed, Admiral argues, *ad nauseam*, that the application was submitted in the name of both the FL Firm and NY Firm. That is true. It is undeniable that the application was submitted in the name of both firms. But that also is irrelevant because it is equally undeniable that the policy actually issued was issued solely in the name of the FL

---

[6]Lawyers Professional Liability Insurance Declarations Page, attached as Exhibit A to D.E. 1 at page 7 of 33.

[7]Lawyers Professional Liability Insurance Service of Suit, attached as Exhibit A to D.E. 1 at pages 8-10 of 33.

[8]August 7, 2006 letter from Nathan Stortzum (in which the in "RE:" line reads as follows: "RE: **Norych and Tallis, LLP**"), attached as Composite Exhibit A to D.E. 106.

[9]Quotations for Professional Liability Insurance, attached as Composite Exhibit A to D.E. 106.

[10]Binder for Layer's Professional Insurance, attached as Exhibit A to D.E. 120.

[11]*See also* Plaintiffs' Memorandum in Opposition (to Admiral Insurance Company's Motion for Summary Judgment [D.E. 120] at pp. 3.

Firm. And against that backdrop, the law is clear that for Admiral to rescind the Policy it must establish a misrepresentation that is "material" regarding the policy actually issued. As such, it follows that the analysis must be on the policy actually issued, not the application.

Next, Admiral actually goes so far as to argue it <u>intended</u> to insure both firms. That argument, however, gets Admiral nowhere. Intent does not, and cannot, change the facts that otherwise determine the outcome. And here, the key fact is that Admiral insured only the FL Firm. As such, Admiral should not be permitted to argue to the contrary.

### 2. **Judicial Estoppel Does Not Apply Here**

Hamstrung by the undeniable fact that the Policy was issued in favor of only the FL Firm, Admiral resorts to arguing that Plaintiffs are judicially estopped from contesting that the NY Firm is an insured under the Policy. That argument is preposterous on its face. Again, the Policy was issued in favor of only the FL Firm. That is plain on the face of the Policy itself. That is a fact, and Admiral cannot run away from that fact by invoking the doctrine of judicial estoppel.

As an initial matter, the predicate for Admiral's invocation of the judicial-estoppel doctrine is the submission of an "Affirmation" submitted by a different law firm, on behalf of different parties, in a different proceeding, that was, simply put, erroneous on a collateral issue. Most pointedly, the FL Firm was <u>not</u> a party to that case. In any event, when Admiral sought to intervene in a case pending in New York – which Admiral did successfully – the attorney representing the defendants in that case (which, again, did not include the FL Firm) submitted an "Affirmation in Opposition" to Admiral's motion to intervene. And in that "Affirmation," the attorney stated that the Policy *"insured [the NY Firm] as well as the [the FL Firm]."*[12] But as noted above, that is simply incorrect. That point aside, judicial estoppel does not, and cannot, apply here for the following reasons:

---

[12]*See* Exhibit C to D.E. 21 at ¶ 6.

- First, the parties must be the same. Here, they are not. The parties in this action are not the same as in the New York action in which the "Affirmation" was submitted by Admiral. Judicial estoppel does not apply for this reason alone.[13]

- Second, a party claiming judicial estoppel must demonstrate it was misled and changed its position based upon the position taken in the earlier action. Here, there is absolutely no evidence that Admiral was misled in the other proceeding. And there certainly is no evidence that Admiral changed its position. As such, judicial estoppel does not apply here either.[14]

- Third, judicial estoppel does not apply unless the opposing party was successful in persuading a court to accept its position. Here, there is no evidence that the parties advocating against Admiral's intervention in the New York action were successful in persuading the New York court that the Policy insured both the NY Firm and FL Firm. And those parties certainly did not obtain any relief based upon that argument. To the contrary, Admiral was successful in intervening in that New York action. To wit, Admiral's motion to intervene in that case was granted over the objection of the parties submitting that "Affirmation." As such, judicial estoppel does not apply here for that reason too.[15]

Thus, the bottom line is that judicial estoppel does not apply here for the foregoing host of reasons, and as such, Admiral should not be permitted to invoke that doctrine to challenge the undisputed fact that the Policy was issued in favor of only the FL Firm.

### 3. Admiral Did Not Assume Any Risk Related to the NY Firm

Finally, Admiral argues that even assuming, *arguendo*, that the Policy insured only the FL Firm, and not the NY Firm, which is plainly the case, the alleged misrepresentation regarding the Tallis

---

[13]*See* Chase & Co. v. Little, 156 So. 609 (Fla. 1934) (to work an estoppel, the parties in a later action, must be the same parties in the earlier action); Olmsted v. Emmanuel, 783 So.2d 1122, 1126 (Fla. 1st DCA 2001) ("in order to work an estoppel, the parties must be the same"); Sunbelt Cranes Const. and Hauling, Inc. v. Gulf Coast Erectors, Inc., 189 F. Supp.2d 1341, 1346 (M.D. Fla. 2002) ("Gulf was not a party to the [prior] action. It is difficult to make an inconsistent pleading against a party who was never part of the [prior] action.").

[14]*See* Vining v. Segal, 773 So. 2d 1243 (Fla. 3d DCA 2000) ("party claiming the estoppel must have been misled and have changed his position"); Ramsey v. Jonassen, 737 So. 2d 1114 (Fla. 3d DCA 1989) ("the party claiming the estoppel must have been misled and have changed his position").

[15]*See* New Hampshire v. Maine, 532 U.S. 742, 750 (2001) ("courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position"); Allapattah Services, Inc. v. Exxon Corp., 372 F. Supp.2d 1344, 1367 (S.D. Fla. 2005) ("the court should look closely when the party has succeeded in persuading it to accept the party's earlier position."); *see also* Grau v. Provident Life and Acc. Ins. Co., 899 So.2d 396, 401 (Fla. 4th DCA 2005) ("the doctrine of judicial estoppel does not elevate mere prior inconsistent statements into a case busting equitable defense").

Defalcations is "material" nonetheless. But that argument is demonstrably false. In order to permit rescission, a misrepresentation must be "material" to the risk actually assumed under the Policy. Here, the Tallis Defalcations concern only the NY Firm, whereas the Policy was issued in the name of only the FL Firm. As such, it follows that an alleged misrepresentation regarding the Tallis Defalcations (which concerns only the NY Firm) is completely immaterial to the risk assumed under the policy (which concerned only the FL Firm).

Admiral's response to that is pure sophistry. Admiral claims it would not have issued the Policy had it known of the Tallis Defalcations. That, however, is immaterial. What matters is that no claim arising under the Tallis Defalcations (which concerned only the NY Firm) could trigger a claim under the Policy (which concerned only the FL Firm). That is to say, if a claim had been made against Admiral for allegations concerning the Tallis Defalcations, Admiral, which issued a policy in favor of only the FL Firm, undoubtedly would have denied coverage – and Admiral would have been have correct in doing so. It is nothing of short of outrageous for Admiral now to argue that it actually issued the Policy in favor of a firm that it simply did not did not insure.[16]

### IV.     Admiral Should Be Precluded from Arguing Ms. Kule's Conduct Is Not a Wrongful Act

Plaintiffs' position regarding the prerequisite of a "Wrongful Act" is simple. Mr. Linhart's failure to oversee client trust funds constitutes a Wrongful Act, as defined under the Policy. Admiral does not so much as respond to that precise argument, but rather seeks to avoid it and cloud the issue so as to confuse the trier of fact. Specifically, Admiral argues that Ms. Kule's misappropriation of client funds does not constitute a Wrongful Act, which is defined as any acts arising out of Professional Services. But Admiral's emphasis on the conduct of Ms. Kule, rather than on the conduct of Mr.

---

[16]Indeed, it is no stretch of the imagination to assume that if the NY Firm had filed a lawsuit seeking coverage from Admiral under the Policy in this litigation for a claim arising from the Tallis Defalcations, Admiral assuredly would have responded with a Rule 11 Motion.

Linhart, is a misdirection tactic intended to mislead and confuse the trier of fact. Admiral should not be permitted to do so and, therefore, Admiral should be precluded from arguing Ms. Kule's conduct is not a wrongful act.

## V.     Admiral Should Be Precluded from Arguing the Claims Do Not Seek Damages

Under the Policy, the Claims made against the Plaintiffs must seek Damages that the Plaintiffs are "legally obligated to pay." Here, it is undisputed that the Claims seek Damages that Plaintiffs are "legally obligated to pay." Admiral does not dispute that point. Rather, Admiral argues that the law of insurance does not recognize damages owed pursuant to an intentional breach of contract. There is, however, no language in the actual Policy to support Admiral's position. Moreover, re-characterizing the negligent oversight of client trust funds as an intentional breach of contract is a gross mischaracterization of the nature of claims at issue in this case and, therefore, the law upon which Admiral purports to rely is wholly inapposite. Accordingly, Admiral should be precluded from arguing that the Claims do not seek Damages.

## VI.    Admiral Should Be Precluded from Arguing the Insureds Had Prior Knowledge

As an initial matter, Admiral's Response is predicated on a false evidentiary foundation. Specifically, Admiral argues, repeatedly, that Mark Norych has acknowledged that he always knew the transfers from trust accounts to the operating accounts "*exceeded the amount that [the Florida Firm] was entitled to retain as its fee*."[17] That is incorrect. Prior to the effective date of the Policy, Mr. Norych was completely unaware that the Florida Firm was transferring in excess of the amounts to which it was entitled.[18] The only admission Mr. Norych made during his deposition is that, <u>only after the situation concerning the Missing Funds came to light</u>, he came to appreciate what had happened.[19]

---

[17]*See* D.E. 133 at p. 7.

[18]*See* D.E. 107 at ¶ 12 - 14.

[19]<u>Id</u>.

But Messrs. Norych and Linhart both remain adamant that they had no idea that it was taking place while it was taking place.[20]  In short, Admiral is glossing over that critical distinction.

But even if <u>Mr. Norych</u> had prior knowledge regarding the Missing Funds – which plainly is a disputed issue of fact – <u>Mr. Linhart</u> had no such knowledge – which is an undisputed issue of fact. To that, Admiral has no response.  The best Admiral can muster is that Mr. Noyrch knew of, or should have known, about the Missing Funds.  But Admiral offers absolutely nothing to counter that Mr. Linhart had no such knowledge.  And under Florida's innocent co-insured doctrine it follows that Mr. Linhart is entitled to coverage, even if Mr. Norych is not.  As such, Admiral should be precluded from arguing the Insureds had prior knowledge.

### VII.     Admiral Should Be Precluded from Arguing that Coverage is Barred by Exclusion K

Admiral's refusal to acknowledge that Exclusion K has nothing to do with this case is beyond puzzling.  Exclusion K provides there is no coverage for any Claim based on conduct actually reported prior to the effective date of the Policy.  In its pleadings, Admiral claims that Exclusion K applies because Plaintiffs allegedly reported the Tallis Defalcations to other insurance companies prior to the effective date of the Policy.  This case, however, has absolutely nothing to do with the Tallis Defalcations.  As such, Exclusion K is wholly and completely inapposite to these proceedings.  Admiral should not be permitted to confuse the trier of fact by arguing to the contrary.

### VIII.    Admiral Should Be Precluded From Arguing Public Policy Precludes Coverage

At the outset, Plaintiffs reiterate that Admiral's public-policy argument presents an issue of law to be decided by the Court.  And against that backdrop, Admiral's legal argument falls short.  The law upon which Admiral purports to rely bars insurance coverage for claims that arise from an <u>intentional breach of contract</u>.  Here, the claims at issue arise neither  from <u>breach of contract</u>, nor from conduct

---

[20]*See* D.E. 107 at ¶ 12 - 14.

that was <u>intentional</u>.  Again, the Wrongful Act at issue here from which the claims arise is Mr. Linhart's negligence in failing to oversee client trust funds.  And on that point, it is undisputed that Mr. Linhart was merely negligent.  To wit, the Florida Bar, after conducting its own investigation into this matter, issued a Notice of No-Probable Cause and a Letter of Advice to Respondent in which it admonished Mr. Linhart for his negligence but cleared him of any intentional misconduct.[21]  In response, Admiral counters that by virtue of Mr. Linhart's negligence, the FL Firm failed to make proper remittances to its clients.  But the result of Mr. Linhart's conduct – which undeniably was merely negligent and nothing more than that – cannot somehow transform his undeniable negligence into an intentional breach of contract.  As such, the public policy upon which Admiral seeks to rely is totally inapposite to the  facts of this case.

## CONCLUSION

Based upon the foregoing, Plaintiffs submit that Plaintiffs' Omnibus Motion *in Limine* should be granted .

Respectfully submitted,

By:  /s Lorenz Michel Prüss
    David A. Rothstein, Esq.
     Fla. Bar No.: 56881
     Drothstein@dkrpa.com
    Lorenz Michel Prüss, Esq.
     Fla. Bar No.: 581305
     Lpruss@dkrpa.com
    Sharlene Y. Escalera, Esq.
     Fla. Bar No.: 58547
     Sescalera@dkrpa.com
    Dimond Kaplan & Rothstein, P.A.
    Offices at Grand Bay Plaza
    2665 South Bayshore Drive, PH-2B
    Miami, Florida  33133
    Telephone:     (305) 374-1920
    Facsimile:      (305) 374-1961

By:  /s Stephen A. Marino
    Stephen A. Marino, Jr., Esq.
     Fla Bar No.: 79170
     Smarino@vpl-law.com
    Ver Ploeg & Lumpkin, P.A.
    100 S.E. Second Street
    30th Floor
    Miami, Florida 33131
    Telephone:     (305) 577-3996
    Facsimile:      (305) 577-3558

    *Attorney for Plaintiffs*

---

[21]*See* D.E. 107 at ¶ 24.

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that on February 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Joshua D. Lerner, Esq.
Rumberger Kirk & Caldwell
Brickell Bayview Centre
80 SW 8th Street, Suite 300
Miami, Florida 33130
*Attorney for Defendants*

Jeffrey A. Goldwater, Esq.
Robert A. Chaney, Esq.
George J. Manos, Esq.
Lewis Brisbois Bisgaard & Lewis
550 West Adams St.  Suite 300
Chicago, Illinois 60661
*Attorney for Defendants*

By:  /s Lorenz Michel Prüss
Lorenz Michel Prüss